(Decided February 28th, 1895.)

---

JOHN J. SHANFELTER, TRADING AS C. DUFFY & CO. *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Delay in Condemnation Proceedings—Liability of Municipality—Proof of City Ordinances.*

The Court does not take judicial notice of municipal ordinances, and in a declaration relying on them, they should be more particularly referred to than by number and date.

Ordinances of the city of Baltimore directed that a certain square should be acquired as a site for a new Court House. Plaintiff was the lessee of a hotel occupying part of the site, and all the interests in the square were purchased or condemned by the city, except the plaintiff's. No condemnation proceedings had been instituted when plaintiff sued the city to recover damages alleged to have been caused to his business by the delay in acquiring his property. The delay complained of was from May 1, 1893, when a Building Committee was appointed by ordinance, to April 7, 1894, when the suit was instituted. The Building Committee had no power to condemn until after they had failed to agree upon a price with the land owners, and there was no allegation that they had acted in bad faith. *Held*, that the passage of the ordinances was not a commencement of condemnation proceedings, and that the plaintiff had no right of action against the municipality on account of the delay to institute such proceedings.

Appeal from the Baltimore City Court. The case is stated in the opinion of the Court.

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, BRISCOE, PAGE, ROBERTS and BOYD, JJ.

*Richard S. Culbreth*, for the appellant.

The property owner is entitled to recover damages caused by any unreasonable delay, either to prosecute or abandon condemnation proceedings, because holding the condemnation over the property inflicts loss and injury. *Black's case*, 56 Md. 339, and 50 Md. 241; *Norris' case*, 44 Md. 598. If such be the reason, what difference in principle can there be whether condemnation is so held by virtue of an ordinance which declares that a definite piece of property shall be taken for public use, or of a petition to the Court, praying that it may be so taken. There is the same publicity in both cases. The same uncertainty hangs over the property as to the question of the owner's tenure. His conduct in regard to the property is under the same restraint, and the waiting game is played with the same disaster to the victim. In the case of private corporations, which have the right of eminent domain, the commencement of proceedings is often the first intimation of their intention to condemn certain property for their use. Under such circumstances it would be difficult to conceive of a case where any damage could arise until the proceedings had been commenced. But where, as in the case before the Court, a public ordinance contains a declaration that specified property shall be taken, from the moment of its passage, all the evils exist, so far as the owner is concerned, as in the case where proceedings have been, in fact, begun. The passage of such an ordinance is really the commencement of the proceeding. Had the ordinance been silent as to the particular property to be taken, a different case would be presented. In the case before the Court, a peculiar hardship lies in the fact that a hotel, such as the Imperial Hotel, is usually a land-

mark in the city in which it is located.   It has a history. The moment the announcement is made that it is to be torn down, that history is published not only in the local papers but in the papers of cities in other States, because of the interest which guests in all sections of the country naturally have in it, and of the information which it conveys to travelers that they can no longer procure accommodations.

Condemnation proceedings are intended to be summary and expeditious.   *New Central Coal Co.* v. *Iron Co.*, 37 Md. 565 ; *Leisee's case*, 2 Md. App. Rep. 110.

*Thomas G. Hayes, City Counsellor*, and *William S. Bryan, Jr., City Solicitor*, for the appellee.

The declaration is had on demurrer, because the ordinances relied on are not given in substance or legal import. *Central Savings Bank* v. *Baltimore*, 71 Md. 523 ; *Hanover Ins. Co.* v. *Brown*, 77 Md. 74.

The Building Committee, as public servants, had under the ordinances a discretion as to the time of commencing the condemnation proceedings, which discretion was to be controlled by the public interests and not by the wishes of the appellant.   There is no legal duty imposed on the Building Committee by the ordinance, due and owing to the appellant, a breach of which would render the appellee liable in damages to the appellant.

The market value of his property, which is paid the appellant when the property is taken, includes its whole value as it exists at the time of taking, but does not include good will, as of a hotel or the like.   Delays in commencing the condemnation proceedings can in no possible way cause any diminution of this value.   *Baltimore* v. *Rice*, 73 Md. 307 ; *Moale's case*, 5 Md. 314, 322 ; *Musgrave's case*, 48 Md. 290.

The delays which give the owner a right of action are the unreasonable delays which occur after the commencement of the condemnation proceedings, but not delays in commencing such proceedings.   It is undoubted law that if, after condemnation proceedings have been completed,

there is an unreasonable delay on the part of the city authorities, after protest from the property holders, in determining whether they will accept the land for a public use or not, or in payment for the same, the property holder is entitled to recover such damages as he has actually suffered by reason thereof. *Norris' case,* 44 Md. 607 ; *Graff's case,* 10 Md. 544; *Musgrave's case,* 48 Md. 272 ; *Lake Roland Elevated R. R.* v. *Baltimore,* 77 Md. 372 ; 2 *Poe on Pleading and Practice,* sec. 784.

It has also been held that where there is an unreasonable delay in prosecuting a condemnation for opening a street *already commenced,* after notice and remonstrance from a property holder, he can recover his actual damages suffered thereby. *Black's case,* 50 Md. 242 ; *Idem,* 56 Md. 333. But in all the cases, so far as we are aware, in order to give a cause of action, the work of condemnation must have been commenced ; there must have been some overt act affecting the property holder's land.    In stating the limitations of the rule, JUDGE DILLON, in his work on Municipal Corporations (vol. 2, sec. 609), speaks of the cause of action arising from "wrongful and injurious acts of the corporation *in* the course *of the proceedings."*

BOYD, J., delivered the opinion of the Court.

This appeal is from a judgment of the Baltimore City Court sustaining a demurrer of the appellee, the defendant below, to the declaration.   The appellant, who was the plaintiff below, alleges that he is the lessee "for a long term of years" of a property known as the Imperial Hotel, on the square bounded by Calvert, St. Paul, Fayette and Lexington streets, in the city of Baltimore, which square had been selected by the city authorities, under certain ordinances passed in pursuance of an Act of the General Assembly of Maryland, for the erection of a new Court House, and that, although all interests, except the plaintiff's, in said square, had been obtained for the purposes mentioned in the

Act of Assembly and in the ordinances, the Building Com-
mittee of the new Court House " neglected, delayed and
failed to complete the purchase or condemnation of his
interest in said property, from the first day of May, 1893,
to the time of the institution of the suit, although repeat-
edly requested and warned so to do." He avers that he
has been greatly damaged, injured, obstructed and preju-
diced in his business as hotel keeper, by reason of the
delay, in the use and enjoyment of his property.

The claim intended to be presented by the declaration is
the right to recover damages for what is alleged to be an
unreasonable delay in acquiring plaintiff's property after the
passage of the ordinances selecting as a site for the new
Court House the square which includes the said hotel prop-
erty, notwithstanding the requests and warnings of the
plaintiff. It is contended, however, on the part of the city,
that the declaration is technically defective in not setting
out at least the legal import of the ordinances, upon which
appellant bases his right to recover. They are only referred
to by number and dates, and not even the substance of
them is given. The Court cannot take judicial notice of
their contents, and hence it is not informed by the declara-
tion what duties are imposed or powers conferred by them.
Without the provisions of the ordinances, on which the
plaintiff relies, being before the Court, it is impossible
for it to determine whether they impose such duties on the
defendant or render it liable for failure to perform them.
We do not think, therefore, that the references to said ordi-
nances are sufficient to comply with the well-established
rules of pleading adopted in this State.

But, as we would have the power to remand the case so
that the declaration could be amended to meet our views,
as to mere matter of form, which we need not state more
fully, we will determine the main question intended to be
presented, as it has been fully argued, and the ordinances
have been, for the purpose of the argument, treated as if
before us.

The appellee, having been authorized by an Act of Assembly, passed Ordinance No. 100, approved October 7th, 1892, by which the Commissioners of Finance were authorized and directed to issue bonds of the city to the amount of six million dollars, from time to time, as the same might be required for the purposes therein mentioned. One million seven hundred and fifty thousand dollars, or so much thereof as might be required of the proceeds of the sales of said bonds, were directed to be used for the purchase of ground, erecting thereon and properly furnishing a new Court House and Record Office. By Ordinance No. 81, approved April the 20th, 1893, the square above mentioned was selected as the site, and the Mayor, Comptroller and Register were directed to acquire title to a portion of the property, included within the bounds of the square, on which John F. Carter held an option, for the sum of one hundred and thirty-two thousand five hundred dollars, to be paid out of the one million seven hundred and fifty thousand dollars. Ordinance No. 83, approved April 20th, 1893, authorized the Building Committee of the new Court House (to be thereafter appointed) in case it could not agree with the owner or owners of any lot or portion of this square, or any interest therein, or if the owners were under age, etc., to condemn the same, and then minutely prescribed the course of proceeding in the event of condemnation. The second section of that ordinance limited the total amount to be expended by the Building Committee to one million six hundred and seventeen thousand and five hundred dollars, to be paid out of the sum appropriated for the new Court House, and directed the Commissioners of Finance to sell from time to time, as the same were needed, as many of said bonds as should be required to supply the said sum. Ordinance No. 108, approved May the 1st, 1893, named the Building Committee of the new Court House and authorized them to advertise in Baltimore and other cities, inviting the submission of drawings, plans and specifications. Ordinance No. 187, approved May the 25th,

SHANFELTER vs. M. & C. C. OF BALTO. 489

Md.] Opinion of the Court.

1893, further defined the duties and powers of the Building Committee. It authorized them to employ a competent architect, gave them power to provide for the erection of the new Court House upon the site already selected, when it shall have been acquired, and to do all acts and make all contracts essential in their judgment to the best and most successful accomplishment and carrying out of the design of building the new Court House, provided that the full amount expended for all purposes should not exceed one million six hundred and seventeen thousand and five hundred dollars, which sum it will be observed is the difference between the total amount appropriated and the amount paid for the property held under the John F. Carter option.

The above are all the ordinances referred to in the declaration and cited in argument, and hence we need not refer to any others. It is apparent from an examination of them, that it was contemplated to erect a large and expensive building. Considerable time was necessarily required to perfect the plans for the building, and the only money at the command of the Building Committee must be raised by the Commissioners of Finance from sales of the bonds authorized for the purpose. The members of the committee were only named in the ordinance approved the first day of May, 1893. The delay complained of by the plaintiff was from that date until a day not later than the 7th day of April, 1894, at which time the declaration was filed, although the record does not disclose whether the suit was instituted then or prior to that time. If the passage of the ordinances, selecting the site, appointing the committee, etc., gave the plaintiff a cause of action, as contended by him, unless executed without any unreasonable delay, it would seem to be a rather severe construction of what is to be deemed unreasonable to require the committee at the peril· of rendering the city liable for damages, to acquire all the property necessary and perform all the other labor incident to the early part of their work within eleven months from their appointment.

But we cannot assent to the doctrine sought to be established by the plaintiff, that the mere passage of these ordinances, without any execution of them so far as the plaintiff is concerned, gives him a right of action. It may be true that the selection, as a site for the new Court House, of the square, which includes the property in which the plaintiff has an interest, may make his tenure uncertain and may possibly affect his business to some extent, but if that be conceded we do not think it follows that under the circumstances of this case the city is liable to him merely because it has not proceeded to acquire his interest. The determination on the part of the city authorities to adopt that particular site, is not a taking of the plaintiff's property, nor is it even a declaration of their intention to take it *in invitum*, as long as he holds it. The Building Committee has no authority under these ordinances to condemn it without first making a proper effort to agree with him. It may be that his term will expire before the property is needed, or negotiations for a purchase, if fairly conducted on both sides, may result in an agreement, and save the necessity of condemnation.

However this may be, passing the ordinances cited cannot properly be deemed a beginning of condemnation proceedings, and no such proceedings can be instituted until some attempt to agree is made. That is a condition precedent to the exercise of the right of eminent domain by the Building Committee, as Ordinance No. 83 only gives them the power to condemn in case they cannot agree with the owners, excepting those laboring under under some disability, non-residents and unknown heirs. We think it clear, therefore, that it cannot properly be said that these ordinances were the commencement of condemnation proceedings, but they only vest the power to condemn in the Building Committee and prescribe their mode of procedure. As well might it be said, that a charter of a railroad company authorizing it to construct a road between two given points, and vesting it with the the power of eminent domain,

is to be treated as a commencement of such proceedings, because it authorizes the company to adopt them.

It is claimed, however, on the part of the appellant, that the case of *Mayor, etc., of Baltimore* v. *Black*, 56 Md. 333, which had been previously in this Court, as reported in 50th Md. 235, establishes the doctrine contended for by him. It may be true that the language of the learned Judge who delivered the opinion of the Court, both in 50th Md. and 56th Md., may give some ground for that contention, if the facts of the case be not borne in mind. But the statement of facts in the opinion reported in 50th Md. shows that an ordinance had been passed on the 10th day of June, 1871, to condemn and open Presstman street from Gilmor to Monroe street, and on the 12th day of the same month the Commissioners for Opening Streets gave notice, as required by the City Code (1869), of their intention to meet on July the 12th, and proceed to execute the ordinance. The Blacks owned land lying between Gilmor and Monroe streets, which would be divided by Presstman street, and claimed compensation for the whole of two lots of ground, a part of which was required for the bed of the street. They then surrendered the two lots to the city, and the Street Commissioners sold the parts thereof not included in the bed of the proposed street, under the provisions of the City Code. No further action was taken in the premises until the 20th day of May, 1875, when the ordinance of June the 10th, 1871, was repealed and the proposed improvement abandoned. It was very properly held, under those circumstances, that an action would lie for damages caused by the unreasonable and unauthorized delay, provided some steps had been taken to put the city in default, such as remonstrances, complaints or applications by the owners to the city authorities to proceed with the work or repeal the ordinance. In point of fact, the proceedings had not only been commenced, but nothing remained to be done but to pay the damages or abandon the work. Although it is held that the city can abandon such improvements, even after

the assessment of damages, yet, if an owner of property has been injured by an unauthorized delay and the city has been made aware that he is not satisfied to let his title to the property remain in that unsettled condition, he is not without remedy. So, although it is said in that opinion that when an ordinance for condemning and opening a street has been passed, and remains unexecuted or but partially carried into effect, the property owner cannot maintain an action for such alleged negligence on the part of the city, unless he has done something to put it in default, it is apparent that it was not intended to say that if he did take such action, and the ordinance remained *wholly unexecuted as to the particular property in controversy*, it necessarily followed that an action would lie.

But the ordinances now being considered differ materially from the one before the Court in the *Black case*. In the latter the law provided that before the Mayor and City Council should pass any ordinance for the opening of a street, they should give sixty days notice of the application for the passage of such ordinance in two daily newspapers published in the city of Baltimore. Then, when the ordinance was passed, the Street Commissioners (who were annually appointed, as other city officers) were required to give thirty days notice of the object of the ordinance under which they proposed to act, and of the day, hour and place of the first meeting to execute the same. The Commissioners were then required to meet at the time and place named, and proceed to award damages, assess benefits, etc. They were not vested with the power to negotiate with the owners, and in case of failure to agree, then to proceed to condemn, but they at once fixed the damages, subject, of course, to certain rights of appeal, etc. In this case the Building Committee had not even been appointed when the site was determined upon, and, as already stated, their duty relative to the acquisition of the property was to purchase it, if they could, at such price as they deemed just and the appropriation would permit of, and in the event of a failure to

SHANFELTER vs. M. & C. C. OF BALTO.   493

Md.]                    Opinion of the Court.

reach an agreement, they could then proceed to condemn. They are vested with large discretion, which the nature of their duties required. We have thus devoted considerable space to the consideration of Black's case, as the counsel for the appellant earnestly and forcibly contended that it sustained the position taken by him. But if we gave the fullest and broadest meaning to the language there used, without applying and limiting it to the facts of that case, which we must do, we would still be met with the marked difference between an ordinance for opening a street under the provisions of the City Code of 1869 and the ordinances now before us, as above indicated.

Without prolonging this opinion by discussing *Graff's case*, 10 Md. 544, and *Norris' case*, 44 Md. 607, we need only say that the property involved in them had been actually condemned, and they do not in anywise conflict with the views herein expressed by us. On the contrary, they and *Musgrave's case*, 48 Md. 272, sustain the conclusion reached by us.

In *Leisee* v. *St. Louis and Iron Mountain R. R. Co.*, 2 Mo. App. Rep. 110, so much relied on by the appellant, the company had filed its petition and had commenced condemnation proceedings. The facts of the hypothetical case, therein stated by the learned Judge who delivered that very able opinion, which is quoted in the brief of the appellant, would amount to bad faith on the part of the condemning company. We do not mean to say that an owner of property cannot under any circumstances have relief unless the company or municipality has actually commenced condemnation proceedings. It may be possible that a case might occur, which would show such a deliberate effort and determination to depreciate the value of property for the purpose of subsequently acquiring it by condemnation at a reduced and insufficient price, as to render the company or municipality liable on the ground of fraud. If such case is ever presented, it will be time enough to determine how far relief can be given, but in this case it is not alleged or

intimated that the members of the Building Committe were not acting in perfectly good faith. We have found no authority which sustains the right of the property owner to recover damages under such circumstances as those before us.

The appellant has not been disturbed in his possession, and if the prospective use of the property for a new Court House has affected him injuriously, it is only of that character of loss that anyone having an interest in property may sustain by reason of the provisions of law, which require all persons to hold their property subject to be taken for public purposes, or by those authorized to exercise the right of eminent domain, for what are deemed to be at least *quasi* public purposes upon the payment or tender of just compensation.

If no ordinance selecting a site had been passed, but the defendant had simply been authorized to erect a new Court House, and the city authorities and the prevailing sentiment of the community favored the use of this square for the purpose, by reason of its central locality and the fact that the city already owned a considerable part of it, the plaintiff might suffer the same character of loss he now complains of, yet it would hardly be contended that the city would in such case be liable to him, however much he may have urged and insisted upon the authorities taking definite and final action. It would be in that as it is in this case, *damnum absque injuria.*

It follows from what we have said that the judgment must be affirmed.

*Judgment affirmed with costs to the*
*appellee.*

(Decided February 28th, 1895.)