DAVID M. RAGAN *v.* SUSQUEHANNA POWER COMPANY ET AL.

[No. 26, April Term, 1929.]

*Decided June 25th, 1929.*

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*A. Freeborn Brown,* with whom was *John S. Young* on the brief, for the appellant.

*Albert D. Mackey* and *Stevenson A. Williams,* with whom were *William J. Bratton, Joshua Clayton,* and *Fred R. Williams,* on the brief, for the appellees.

BOND, C. J., delivered the opinion of the Court.

This appeal is from a judgment for defendants on demurrer to a declaration, in a suit at law by a landowner for damages for failure of the power company and the officers constituting the County Commissioners of Cecil County to open a new road in substitution for a road flooded by the water behind the dam at Conowingo. The legal provisions made for transferring traffic from flooded roads and bridges have been fully stated in the opinion in *Huffman v. State Roads Commission,* 152 Md. 566, and little repetition is necessary. That case was concerned with the old Conowingo Bridge and roads leading to it, and the road involved in this case was one which ran along the river in Cecil County, but the present suit is founded on a supposed violation of the same agreement and statutes as are set out in the former one.

The appellant owns land on a road which ran to the river and connected at the river bank with what was known as a Tow Path Road, and by it had a means of passage near the river to places further down, to the east. He also had a means of passage to the same places by roads on the upland, away from the river, but that way was longer. The Tow Path Road having been flooded, he is now relegated to the upland, longer roads, and he complains that the power company and the county commissioners were obliged to relocate the Tow Path Road or to continue it, and that by their failure to do either, and his consequent relegation to the upland roads, his property has lost value and his rentals have been reduced. The Tow Path Road is alleged to have been a public road. And the wrong on the part of the appellees is found in closing the Tow Path Road without substituting a new road as provided in their agreement or else following

the statutory formalities for closing roads under ordinary conditions. The members of the board of county commissioners are sued, however, in their personal capacity, and are charged with personal liability arising from wrongful personal motive in the action taken by them.

The agreement referred to is that of November 2nd, 1925, between the power company and the several state bodies, for the relocation of the Conowingo Bridge and state and county roads leading to it. An Act of 1927, chapter 316, approved and ratified that agreement and authorized the execution of the deeds and releases required in carrying out the plans agreed upon. That agreement recited the charter rights of the power company to build its dam and hydro-electric station, and the necessity of flooding the old Conowingo Bridge and roads leading to it, the power of the State Roads Commission to select, construct, improve and maintain a general system of improved roads, and the control .by the county commissioners of county roads not committed to the care of the State Roads Commission, with the right of opening and closing roads, and it then agreed upon provisions for the new bridge and its approaches. To this there was added a provision for release by the State Roads Commission and the county commissioners of all damages resulting from the overflow of state or county roads "in the contiguous or nearby election districts * * * which end at the water's edge, but continuous county roads so overflowed shall be relocated and new bridges provided at the expense of the company and satisfactory to the counties." The appellant contends that this provision for relocation applied to roads which ran along the river as well as to those which led to the river and continued across it by bridges, and imposed an imperative obligation on the appellees to construct a substitute road for the flooded Tow Path Road. And this obligation, he alleges, has been disregarded to his injury by a conspiracy between the appellees in a supplemental agreement, in which they designated the Tow Path Road as a private road, and relieved the power company of any duty to relocate and reconstruct it.

As a mere conspiracy is not a tort, and has no effect on rights of action except in so far as it may in particular cases render persons participants in wrongful acts or omissions (*Robertson v. Parks,* 76 Md. 118), there must be found in the allegations of the declaration some such act or omission causing the injury complained of, or no right of action is shown. This court has already decided that it was within the powers granted and confirmed by the Legislature to the county commissioners and the power company to make the agreement concerning the roads to be flooded. The charter powers of the company included the right to acquire the public property, and the flooded roads were as a result "destroyed by conditions which they (the county commissioners) were powerless to prevent." *Huffman v. State Roads Commission,* 152 Md. 566, 586. And that decision disposes also of any contention that the old roads could not lawfully be closed except by following the procedure for the exercise of discretion in closing roads under ordinary conditions. Code, art. 25, secs. 142 etc. By the authorization of the project their closing was provided for beyond that control or discretion to which proceedings under the Code would be addressed. No wrong can therefore be found in the closing of the old road, but must be found, if at all, in a failure to make a relocation of it. And what relocation was required? The relevant words of the agreement itself might, perhaps, be taken to refer only to old roads which, instead of ending at the water's edge, continued across the river and therefore would require in the new conditions to be relocated with new bridges. But the statute approving the agreement, Act 1927, chapter 316, is more general in its expressions, and the parties have argued the case on the supposition that the agreement referred to roads paralleling the river as well, and we follow that view, without passing on the correctness of it. We think that, if the agreement is applied to such parallel roads, it cannot reasonably be construed to require relocation of them in all instances upon new, independent beds. Moving such roads further from the river and towards other

roads which may already exist there would suggest at once the desirability of making one road sufficient for all traffic in the same direction, and relocation with new independent roadbeds might obviously be an unnecessary, wasteful expense. In argument in this case it has been stated that a single modern highway of the highest standard of construction has in fact been built along the upland roads to serve all traffic running in the general direction of the river, and leading to the points formerly reached by the Tow Path Road. The fact is not alleged in the declaration being considered, but the statement affords an illustration of possible solutions which it would be unreasonable to suppose the Legislature or the parties to the contract would intend to exclude. A mere lack of new, independent beds would not, then, indicate a departure from the agreement for relocation of roads running along the river, assuming that to be the agreement. As we see it, such a departure could reasonably be found only in a failure to provide for the traffic somewhere; and no such departure is complained of. The complaint is that the other roadways are longer. But there was no obligation to furnish a road equally short. The declaration does not, we think, allege any wrong in a departure from powers of the county commissioners and the power company, under the statutes of the state, or under the agreement referred to.

A wrongful motive on the part of the members of the board of county commissioners in dispensing with a new independent bed for the Tow Path Road is urged as a ground of personal liability in them, but if such a motive existed and could afford ground for suit, it has not been alleged here in any such definite charge as a court could take cognizance of. It has been alleged that the parties "illegally," "unlawfully," "fraudulently," and "for their mutual advantage and benefit," conspired and agreed to dispense with relocation on an independent roadbed, but such words as these are characterizations of the needed facts rather than allegations of them. Charges of fraud are never regarded in law as suffi-

cient unless accompanied with allegations of the facts and circumstances which constitute the fraud. *Hughes v. McDougall,* 142 Md. 1, 6; *Snyder v. Snyder,* 142 Md. 290, 297; *Homer v. Crown Cork & Seal Co.,* 155 Md. 66, 73 and 83. The words "for their mutual advantage and benefit" add nothing to comply with this requirement, for they simply "refer to an element of self-seeking which may always be presumed to exist where there is any fraud at all. They are too broad to supply the required specification of fraud. If the plaintiff meant to prove that an exercise of power for private ends was procured by bribery or other corrupt inducement, he should have stated those facts, facts, that is, which would show fraud and impropriety on their face, even without the plaintiff's characterization of them as such.

Finally, the appellant argues that, even if all that has been done has been rightly done so far as the statutes and the agreement are concerned, his property has been taken by it without payment of compensation, because the comparative inconvenience in being compelled to take the longer road has deprived him of some part of the value of his land. But it is settled that subjection to such inconvenience does not amount to a taking, and so deprive the owner of legal rights. *Huffman v. State Roads Commission,* 152 Md. 566, 586; *German Evangelical Lutheran Congregation v. Baltimore,* 123 Md. 142, 152.

*Judgment affirmed, with costs to the appellees.*