FRIENDSHIP CEMETERY OF ANNE ARUNDEL COUNTY ET AL. *v.* MAYOR AND CITY COUNCIL OF BALTIMORE ET AL.

[No. 204, October Term, 1951.]

432

*Decided July 15, 1952.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, HENDERSON and MARKELL, JJ.

*Paul F. Due,* with whom were *D. Eugene Walsh* and *Due, Nickerson, Whiteford & Taylor* on the brief, for the appellants.

*Stanford Hoff* and *Daniel B. Leonard, Assistant City Solicitor of Baltimore,* with whom was *Thomas N. Biddison, City Solicitor,* on the brief, for the appellees.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment entered for costs after the sustaining of a demurrer to each of three counts of appellants' amended declaration, after the appellants declined to further amend.

For the purpose of this opinion we will recite first the pertinent matters alleged in the third count of the declaration. This count alleges that the appellant, Friendship Cemetery of Anne Arundel County, hereinafter called the Cemetery Company, owns Friendship Cemetery, approximately nine acres in area in Anne Arundel County. The other appellants are lot owners in that Cemetery. The appellee, the Mayor and City Council of Baltimore (the City), is a municipal corporation which has established an airport known as Friendship Airport, in Anne Arundel County. The remaining appellees constitute

the Airport Board of the Department of Aviation of the Mayor and City Council of Baltimore (the Airport Board), which is the successor of the Baltimore Aviation Commission (the Aviation Commission). Pursuant to authority contained in Chapter 956 of the Acts of the General Assembly of 1945, the City passed its ordinance No. 520 approved July 15, 1946, which contained:

"a councilmanic finding that certain land in Anne Arundel County described therein is necessary for airport purposes and authorizes and directs Aviation Commission to acquire said land by purchase or condemnation. That said Friendship Cemetery is located in the heart of said airport area described in said Ordinance No. 520, being approximately 2500 ft. from the southern boundary, 5400 ft. from the western boundary, 7200 ft. from the northern boundary, and 7600 ft. from the eastern boundary of said airport. That following the passage of said Ordinance No. 520, Aviation Commission commenced the acquisition of the tract described therein. That during 1946, Aviation Commission began negotiating for the acquisition of said cemetery; and said Cemetery Company advised the Aviation Commission it was willing for said cemetery to remain in the airport if the City would only agree to care for it permanently, thus insuring the fulfillment of the Cemetery Company's agreement with the lot owners for perpetual care; but Aviation Commission refused to accept any responsibility for the care of said cemetery. That on February 24, 1947, Aviation Commission passed a resolution directing City Solicitor to institute proceedings to condemn said cemetery; but no such proceedings have ever been instituted. That during the year 1947, negotiations for the purchase of the cemetery were carried on with Cemetery Company, first by Aviation Commis-

sion, and later by its successor, Airport Board; but said negotiations failed for the reason that said City agencies then, and throughout all the negotiations described hereafter, have steadfastly and knowingly refused to pay a price sufficient to comply with the requirements of the formula fixed by the General Assembly in Chapter 804, Acts of 1945, namely, that in addition to damages for the land and improvements, there shall be paid the cost of removal of bodies, markers and monuments and the placing of the same at some other suitable or comparable location within the State of Maryland. That when it developed Plaintiffs were insisting upon being paid on the basis of the measure of damages fixed by said statute, Airport Board, on October 7, 1947, notified Plaintiffs it would not condemn their property. That said refusal of Airport Board to condemn Plaintiffs' property was unlawful and in direct violation of the mandate of said Ordinance No. 520 to condemn all property that could not be purchased by Airport Board. That on January 9, 1948, Plaintiffs instituted an action against Defendants in the Circuit Court for Anne Arundel County asking that the writ of mandamus issue requiring the condemnation of their property. That at said time, the City had acquired all of the 3200 acres within its 'Outline Plat of Friendship Airport Site', dated October 27, 1947, with the exception of Plaintiffs' property and possibly one or two other small parcels of land. That realizing there was no defense to said suit, Airport Board on January 26, 1948, procured the introduction of an ordinance in the Baltimore City Council and by a suspension of the rules, secured the first, second and third readings and passage of said ordinance on said date, without knowledge of the Plaintiffs or any opportunity on their part to

oppose the same. Said Ordinance No. 161, was approved by the Mayor of Baltimore on February 26, 1948. * * * That while said Ordinance No. 161 repeals and re-ordains Ordinance No. 520 aforesaid with amendments, there was no amendment made to section one which describes the tract of land (including Plaintiffs') which it provides 'It is necessary to acquire by purchase or condemnation' for airport purposes. Section 2 of Ordinance No. 520, however, is amended so as to make it discretionary with Airport Board when it will acquire the unacquired parcels, namely, when needed for airport purposes, and even when needed for those purposes, making it discretionary with Airport Board whether it will condemn if the land owner will not agree as to price. The latter provision is directly contrary to said enabling act (Chapter 956, Acts of 1945) requiring condemnation by the City where property needed for airport purposes could not be purchased. That although three and a half years have passed since the passage of said Ordinance No. 161, and although Plaintiffs' land is the only land within the 3200 acre tract not yet acquired, Defendants refuse to condemn Plaintiffs' land or to repeal the provisions of said ordinance declaring Plaintiffs' property to be needed for airport purposes. That in filing an answer to said petition for the writ of mandamus, Airport Board alleged that in the exercise of its judgment and discretion under Ordinance No. 161, it *had* determined that the property of petitioners '*is* not needed, for airport purposes, although there is no formal or written record of any kind in the files of Airport Board showing when or for what reasons it had so exercised its said discretion. That promptly after said suit for mandamus was filed, Airport Board, through the office of its

counsel, the City Solicitor, requested a renewal of negotiations for the purchase of said cemetery and continued such negotiations until July 15, 1948, when it terminated the same on the ground that the amount of money Plaintiffs were asking, namely, $95,000.00 to $100,000.00, was too high. That on August 23, 1948, the minutes of Airport Board show that a Mr. Watner, owner of Meadowridge Cemetery had proposed to remove all the bodies from Friendship Cemetery to Meadowridge Cemetery for $140,000.00, if he could get the consent of all lot owners. That although the minutes contained a notation 'that the proposition of the Friendship people * * * would cost about $95,000.00' said Board nevertheless decided to hold Mr. Watner's proposal in abeyance; and from that date until November 5, 1948, Airport Board continued to negotiate with the said Mr. Watner, at which time counsel for the Plaintiffs protested the consideration of Mr. Watner's plan even for the reduced price of $109,000.00, since Airport Board had refused to consider paying the Plaintiffs $95,-000.00 to $100,000.00. That thereafter Airport Board carried on negotiations with the Plaintiffs and Mr. Watner until December 7, 1948, when it advised Mr. Watner his proposal could not be accepted. That sometime after December 31, 1948, said Airport Board made Plaintiffs an offer of $58,000.00, well knowing said figure was wholly inadequate to cover damages for Plaintiffs' said land and improvements and the cost of removal of the bodies, markers and monuments and the placing of the same at some other suitable or comparable location within the State of Maryland, as required by Chapter 804 of the Acts of 1945. That because said offer of $58,000.00 was inadequate, Plaintiffs refused the same. That throughout these negotiations

the records of Airport Board, as stated, contain no reference to a finding that Plaintiffs' property was not needed for airport purposes, but on the other hand show conclusively that said Board was always ready and willing to purchase said Plaintiffs' property at its own price, but that it felt it could not be required to condemn the same. That following the acquisition of a sufficient amount of property, Defendants, their agents or servants, began the construction of said airport. That prior to the construction of the airport Plaintiffs' property abutted on an improved road connecting with Linthicum and Baltimore City on the north and Annapolis, Washington, etc., on the south. That during the course of construction of the airport this road was eliminated entirely north of Plaintiffs' property; and for a time during 1948, it was barricaded south of Plaintiffs' property, although the barricade in question was subsequently removed. That after the acquisition of the 3200 acres for the airport, the owners thereof moved away and in most cases the houses themselves were razed. That Friendship Church, which adjoined said Cemetery was purchased by the City and razed. That said church had frequently been used by the owners of lots in said cemetery for burial services. That in the month of February, 1949, Defendants, their agents or servants, in the construction of said airport felled trees upon the iron fence and gate of the cemetery, damaging the same beyond repair; and persons unknown removed the broken fence. That, in addition, at or about the same time, said agents or servants of Defendants planted a telephone pole in said cemetery and strung a line across the same and said agents or servants further drove across the cemetery and the graves therein with bulldozers dam-

aging the same. That all of said acts of the Defendants, their agents or servants, were done without knowledge or permission of the Plaintiffs. That because of the acts of the Defendants as well as those of their agents and servants aforesaid, various persons owning lots in said cemetery began removing their dead; and at this time the bodies of approximately 80 of the 600 persons buried in said cemetery have been removed. That because of said acts of the Defendants and those of their agents and servants aforesaid, no one is willing to purchase a lot in said cemetery; and, in fact, no one has purchased a lot therein since 1946, except Plaintiffs, Norman Clark and M. Lillian Clark, who have consummated an agreement to purchase their lot made prior to the coming of the airport. That since the coming of the airport the Cemetery Company has therefore been deprived of new revenue from the sale of lots; and the revenue from the opening of new graves has steadily decreased. That prior to the coming of the airport said Cemetery Company was operated profitably and had accumulated a maintenance fund of from $5,000.00 to $6,000.00. That as a result of the coming of the airport and the acts of Defendants, their agents and servants aforesaid, the unsold land in said cemetery, being more than two-thirds of its area, has become unsaleable for cemetery purposes or any other purpose and said Cemetery Company has therefore been deprived of all lawful use of the same. That this is true also of all unused lots or portions of lots owned by individuals. Further, that as a result of the loss of revenue formerly derived from the sale of lots and from the opening of new graves, as hereinbefore set forth, said Cemetery Company has constantly operated at a loss since the coming

of the airport and is slowly but surely headed for bankruptcy. That while the lot owners are still permitted to bury their dead in this cemetery, those lot owners who have not moved their dead, continue to use this cemetery only because they cannot afford the luxury of owning lots in two cemeteries. THAT THE ACTS OF DEFENDANTS AFORESAID, CONSTITUTE A DELIBERATE EFFORT AND DETERMINATION ON THE PART OF DEFENDANTS TO DEPRECIATE THE VALUE OF PLAINTIFFS' PROPERTY, SO AS TO ENABLE DEFENDANTS TO ACQUIRE IT AT A REDUCED AND INSUFFICIENT PRICE AND WITH A VIEW TO AVOIDING THE PAYMENT OF DAMAGES AS FIXED BY CHAPTER 804 OF THE ACTS OF THE GENERAL ASSEMBLY OF 1945." (Emphasis supplied.) The plaintiff claims $250,000.00 damages.

For the purposes of the demurrer it is of course admitted that the well pleaded matters in the declaration are true.

In *Shanfelter, etc. v. Mayor & City Council of Baltimore,* 80 Md. 483, 31 A. 439, 440, 27 L. R. A. 648, the appellant was the lessee for a long term of years of the Imperial Hotel. Under certain ordinances passed in pursuance of an act of the Legislature the square on which the hotel was located had been selected by Baltimore City for the erection of a new court house. All the interests except that of the plaintiffs, in said square, had been obtained for the purpose mentioned. The declaration further alleged that the building committee of the new court house "neglected, delayed and failed to complete the purchase or condemnation of his interest in said property, from May 1, 1893, to the time of the institution of the suit, although repeatedly requested and warned so to do." Appellant alleged that he had been greatly damaged, injured, obstructed and prejudiced in his business as hotel keeper, by reason

of the delay, in the use and enjoyment of his property. May 1, 1893, was the date on which the ordinance was passed naming the building committee and authorizing them to advertise inviting the submission of drawings, plans and specifications. The delay complained of by the appellant was from that date until a day not later than April 7, 1894. In sustaining the demurrer to the declaration this Court pointed out in that case that the mere passage of the ordinances, without any execution of them so far as the plaintiff was concerned, gave him no right of action. It was conceded that the selection of the square for the court house, which included appellant's property, might make his tenure uncertain and affect his business, but it was held that the city was not liable merely because it had not proceeded to acquire his interest. The determination of the city to adopt that particular site was held not to be a taking of appellant's property nor "even a declaration of their intention to take it *in invium* [*sic.*], as long as he holds it." It was there said that the building committee had no authority under the ordinances to condemn the property before making a proper effort to agree with the appellant, and that the passage of the ordinances could not be deemed a beginning of the condemnation proceedings. This Court, however, said the following in that case, 80 Md. at page 493, 31 A. at page 441: "We do not mean to say that an owner of property cannot under any circumstances have relief unless the company or municipality has actually commenced condemnation proceedings. It may be possible that a case might occur, which would show such a deliberate effort and determination to depreciate the value of property for the purpose of subsequently acquiring it by condemnation at a reduced and insufficient price, as to render the company or municipality liable on the ground of fraud. If such case is ever presented, it will be time enough to determine how far relief can be given, but in this case it is not alleged or intimated that the members of the

Building Committee were not acting in perfectly good faith."

In *Petroli v. Mayor and City Council of Baltimore,* 166 Md. 431, 171 A. 45, 46, the appellants brought an action against the city of Baltimore to recover damages for loss occasioned to them by the city's delay in "carrying out the provisions of the award". A demurrer to the declaration was sustained. The declaration alleged that the city of Baltimore under competent authority condemned appellant's property and damages were awarded in the amount of $3,300.00. The owners were satisfied and tendered themselves ready and willing to transfer the property to the city but it neither paid nor tendered the amount of the award, nor did it accept the landowner's offer to transfer it, but it did attempt to induce appellants to accept therefore eighty-five *per-centum* of the award. All property other than that of the appellants had been acquired. The condemnation had not been abandoned. The city had elected to proceed with the improvement and although appellants' property was indispensable and essential to it, the city had failed, either to physically accept it, or pay the appellants the damages awarded, although frequently requested to do so. This Court in affirming the sustaining of the demurrer said, 166 Md. at pages 433 and 434, 171 A. at page 46: "Appellants' contention appears to be that, upon the facts alleged in the *narr.,* the city's delay in paying the award was unreasonable, that the condemnation of their property for an improvement to which it is essential, and which will be completed, rendered it unsalable and destroyed its market value, and that therefore they are entitled to recover damages in this action. Appellee's contention is that whatever appellants' abstract rights may be, they have failed in the declaration to allege concrete facts sufficient to warrant a recovery. While not universally recognized (*Nichols on Em. Dom.,* sec. 420, 20 C. J. 1086), the law of this state long has been that a condemning corporation is responsible to a landowner for special damages actually

suffered through its unreasonable delay in electing either to abandon the condemnation of his property, or to pay the award therefor. *Graff v. Baltimore,* 10 Md. [544] 553; *Norris v. Baltimore,* 44 Md. [598] 606; *Baltimore v. Musgrave,* 48 Md. [272] 282; *Black v. Baltimore,* 50 Md. [235] 241; *Baltimore v. Black,* 56 Md. [333] 338; *Record Bldg. & Loan Assn. v. Safe Deposit & Trust Co.,* [166 Md. 348]. But to justify a finding that the delay was unreasonable there must be some showing that it was due to bad faith, negligence, or default in some legal duty (20 *C. J.* 1084), and ordinarily whether it was unreasonable is a jury question. *Baltimore v. Black,* 56 Md. [333] 338." The Court there pointed out that even if the appellants were thereby prevented from selling the property they were not damaged "unless they have also been prevented from using it. For if the city eventually takes the property, it must pay the appellants what they in effect concede is the full value thereof, and if in the meantime they have used it in the most beneficial manner permitted by its nature and character, it is not apparent how they have been damaged. It is entirely consistent with the declaration that the appellants have been and are in the full and undisturbed use and possession of the property, and have derived every benefit from it they would have enjoyed had there been no condemnation. If that was the case, they have suffered no damage from the delay of which they complain recoverable in this action. It is, of course, possible that the recorded award prevented them from selling the property, and that they lost thereby the use of the proceeds of such sale, or that because of the progress of the improvement the property was so isolated or affected that they were not able to make any beneficial use of it, but no such facts are alleged in the declaration, and in the absence of such allegations their existence cannot be assumed." In the instant case the direct allegations are made that not only have the lots in the Cemetery become unsaleable, but by reason of appellee's action, bodies have been removed from the Cemetery and

the loss from the sale of lots and the opening of new graves has compelled the Cemetery to operate at a loss and it is headed for bankruptcy. In that case this Court found that the declaration failed to show that the appellants had suffered any special damages as a result of the delay on the part of the city. In the instant case the appellees admit that the appellants have suffered severe damages but contend that these damages are merely incidental as in the case of *Krebs v. State Roads Commission*, 160 Md. 584, 154 A. 131.

In the case of *State v. Ambrose*, 191 Md. 353, 62 A. 2d 359, a jury in 1915 awarded damages in a condemnation proceeding. The basic question before this Court was whether the State had the right, thirty years after the jury's award, but before payment or tender of compensation, to abandon the condemnation proceedings and strike out the judgment in the condemnation case. It was said there, 191 Md. at page 361, 62 A. 2d at page 362: "Almost a hundred years ago it was decided both by the Supreme Court and by this court, that although a jury's inquisition, when confirmed, determines the value to be paid if the property is taken, the inquisition does not constitute a taking, and the condemning public or private corporation, if dissatisfied with the valuation or for any other reason, may abandon the condemnation and is not obligated to take the property or pay the amount of the inquisition. *Baltimore & Susquehanna Railroad Co. v. Nesbit*, 10 How. 395, 13 L. Ed. 469; *Graff v. Mayor, etc. of Baltimore*, 10 Md. 544. It was indicated in the *Graff* case and definitely held in *Norris v. Mayor, etc of Baltimore*, 44 Md. 598, 606, 608, that the property owner may maintain against the condemning corporation an action for damages caused by delay in electing, after assessment of damages, whether to take the property or abandon the condemnation. Much later it was held that unreasonable delay in electing may itself amount to abandonment of the condemnation. *Wagner v. James A. Bealmear & Sons Co.*, 135 Md. 690, 109 A. 466. Still later, the right to

recover damages for delay was reaffirmed, but it was expressly held that in such an action the condemnation award cannot be recovered. *Petroli v. Mayor & City Council of Baltimore,* 166 Md. 431, 435, 171 A. 45. The instant case is not an action for damages for delay."

In *Nauman v. Big Tarkio Drainage Dist. No. 2,* (1905) 113 Mo. App. 575, 87 S. W. 1195, 1196, the condemning authority decided to construct a ditch across appellant's land. The parties failed to agree upon the value of the property to be condemned and condemnation suit was brought against appellant. Damages were assessed to which exceptions were filed by appellant. Without further proceedings the appellee discontinued the action by having an order of dismissal entered. Appellant then brought suit to recover his counsel fees and other expenses incurred on account of the condemnation suit. Defendant demurred and the demurrer was sustained. It was, however, said in that case: "The law however provides for and contemplates a speedy determination of condemnation suits. One of the purposes in view is to avoid through needless delay the infliction of unnecessary damage upon the landowner. It is recognized that frequently the uncertainty and suspense into which he is placed during the proceedings may be used as a coercive weapon to extort his unwilling acceptance of compensation deemed inadequate; and when it appears the proceedings have been needlessly and vexatiously delayed by the corporation and then abandoned such conduct is considered wrongful and will support a recovery for the damages resulting therefrom. * * * The statute failing to impose any liability in the event of abandonment, beyond the payment of costs, none can be enforced, without it appears that the corporation has needlessly, wrongfully, and vexatiously delayed the proceedings, and thereby damaged the landowner. No such allegation is found in the petition, and from the facts averred it is apparent that defendant acted within lawful right. The fact that it filed no objection to the report of the commissioners does not even suggest a wrongful motive

in continuing the action until the following term of court. Its officers, in the exercise of a sound discretion, had the right after the report was filed, to consume a reasonable period of time in arriving at a conclusion upon the course to be pursued."

In *Leisse v. St. Louis & Iron Mountain R. R. Co.*, 2 Mo. App. 105, affirmed by the Supreme Court of Missouri in 72 Mo. 561, the railroad company on July 23, 1872, began condemnation proceedings against appellants' land for the purposes of the railroad. An award was made which was set aside on exceptions by the railroad company. On December 19, 1873, the railroad dismissed the proceedings against appellants' land "the acquisition of which by it had been alleged to be necessary for the public use". The appellants brought an action for damages against the railroad company alleging that prior to the institution of the condemnation proceedings the railroad company had declared that it would locate its road over appellants' land. In consequence they were unable "for years to lease, improve, or in any manner use and employ" their land. They were compelled to lease other property. During the pendency of the suit the land was idle, useless, and subject to the payment of taxes by the appellants. They lost interest on the money therein invested. The property was rendered unsaleable. Appellants were put to trouble and expense and obliged to pay counsel fees. They claimed $10,000.00 damages. A demurrer to the declaration was sustained. The Court on appeal in overruling the demurrer pointed out that the right of eminent domain is a transcendent right. However, care should be used to see that necessity and not some pretence of necessity, actually exists. The Court there said "nothing can be said to be necessary to the accomplishment of an object which can be dispensed with without abandoning the object itself". The Court pointed out that it appears to be unheard of for a corporation to be the sole judge of the necessity and to say that the same things are necessary or unecessary according to the conditions of the real estate market.

"When a piece of property is designated as being in the necessary track of a line of railroad, and proceedings are commenced to condemn it for public use because of its necessity for the promotion of that use, the railroad company (we speak of the law as it stood before 1875) is the sole judge of the necessity, and, if it be content to pay the price which a jury may assess as the value of the property, the owner is compellable to surrender it. It seems wholly inadmissible that the railroad company should be at liberty to declare that a particular piece of property, or a particular series of lots or tracts of land, will be taken as necessary for the location, change, or modification of its line of road; to arrest wholly, by this declaration, any improvement and beneficial occupation of the lots in question; to ruin their market value temporarily at least, perhaps permanently, except with reference to the projected use (all other uses being rendered impossible), and, after an interval more or less protracted, to abandon the proposed line; to say, with all gravity, that the alleged necessity was a loose form of expression, signifying, at most, that it might be convenient to have property if the price was sufficiently depressed, but that it was not of so pressing a nature as to prevent the present discontinuance of proceedings to acquire the land, the tendency of the price of real estate being downward, and the natural operation of such discontinuance being to depress its value in the particular locality; and that for all this the land-owner should be without recourse on the corporation."

According to the allegations here the condemnation authorities have gone much farther than in the case of *Shanfelter v. Mayor and City Council of Baltimore, supra.* Here in using the power to condemn, the appellees have deliberately done everything except institute the actual condemnation proceedings and take the property. Here the action is not one of mere governmental inertia. Ordinance No. 520 declares the land necessary for airport purposes and authorizes condemnation. The Airport Board secured the passage of the amendatory Ordinance

No. 161, giving it discretion when it would acquire the unacquired parcels for airport purposes, after it was unable to reach an agreement with the Cemetery Company. Appellants' land is the only land within the 3,200 acre tract not acquired. Although in its answer filed in the *mandamus* suit it alleged that it had determined that the Cemetery "is not needed" for airport purposes, the power to condemn is still contained in Ordinance No. 161, three and one-half years after its passage. After the suit for *mandamus* was filed the Airport Board requested from the Cemetery Company a renewal of negotiations until July 15, 1948, when it claimed the amount asked was too high. From August 23, 1948, to December 7, 1948, the Airport Board negotiated with a Mr. Watner for the removal of the bodies from the Cemetery. In December, 1948, the Airport Board made appellants an offer, well knowing the amount was not sufficient to cover the cost of removal of the bodies, markers and monuments. It seems inconsistent with appellees' claim that they do not need the property for them to make such an inadequate offer. The Airport Board is still willing to purchase the Cemetery at its own price and it still has power to condemn it. Because of these actions on the part of the appellees 80 bodies of the 600 persons buried there have been removed from the Cemetery, no one is willing to purchase a lot there, and the Cemetery is operated at a loss as an island in the Airport. According to the allegations, the action of the appellees has destroyed all possibilities of sale of lots. Bad faith and unreasonableness on the part of the appellees is a jury question. *Petroli v. Mayor and City Council of Baltimore*, 166 Md. 431, 171 A. 45, *supra*. We are of the opinion that the allegations of this third count are sufficient to support a finding of a jury that appellees have acted in bad faith and unreasonably and have made a deliberate effort to depreciate the value of appellants' property, so as to enable them to acquire it at a reduced price. The demurrer to the third count will therefore be overruled.

The allegations in the first count of the declaration are the same as in the third count except that the last sentence in the third count is omitted from the first count. This count is treated by all parties as one for damages for nuisance. The appellants rely on the case of *Taylor v. Mayor and City Council of Baltimore,* 130 Md. 133, 99 A. 900, L. R. A. 1917C, 1046. There the City built a sewage disposal plant and put it in operation. As a result sewage was spread over a large area of low land near the plaintiff's property. The plaintiff sued for damages because of the stench which arose from this sewage at all hours of the day and night, rendering her dwelling unfit for occupancy. This Court held that the plaintiff was entitled to have the air which passes over her property pure and unpolluted. This Court further held that there was no taking of appellant's property. See *Livezey v. Bel Air,* 174 Md. 568, 199 A. 838. Here the persons buried are of course not disturbed by the airplanes and in the declaration appellants alleged that during 1946, the Cemetery advised the Aviation Commission that it was willing for said cemetery to remain in the airport if the City would agree to care for it permanently, thus insuring the fulfillment of the Cemetery Company's agreement with the lot owners for perpetual care, but the Aviation Commission refused to accept any responsibility for the care of the cemetery. We are of opinion that the demurrer to this first count was properly sustained, considering it as a nuisance count.

The allegations in the second count of the declaration are the same as in the third count except that the last sentence in the third count is omitted and the following sentence is substituted: "That as a result of the acts of defendants aforesaid, plaintiffs' said property has been taken for public use without just compensation, contrary to the provisions of the Maryland Constitution, Article 3, Section 40 A, and without due process of law, contrary to the provisions of the Fourteenth Amendment of the Constitution of the United States." In *Friendship Cemetery v. City of Baltimore,* 197 Md. 610, 81 A. 2d 57,

the same plaintiffs instituted an action against the same defendants asking that the writ of mandamus issue requiring the defendants to condemn the same property for the reason that it had been "taken" by the defendants. The allegations as to taking in that case are the same as in the instant case. In that case the majority of the Court held that there had been no taking by the defendants. After the opinion was filed the appellants filed a motion for rehearing, or in the alternative, for a clarification of the opinion. In that opinion this Court, among other things, said at page 621: "Thus the cemetery company is still using the property for burial of the dead, and it may continue to do so until it is bought or condemned." In the motion filed by the appellants it was pointed out that the unsold lots constituted two-thirds of the area of the cemetery, that the only use which could be made of it was to sell it for burial purposes, and these sales had been prevented by the action of the appellees. Appellants contend that it is not necessary to show a total destruction of their property in order to entitle them to a recovery for a "taking". They rely on the cases of *U. S. v. Causby,* 328 U. S. 256, 66 S. Ct. 1062, 90 L. Ed. 1206, and *Mayor and City Council v. Himmelfarb,* 172 Md. 628, 192 A. 595. The allegation that these lots could not be sold was considered in 'the former opinion and the two cases just mentioned were discussed. After the motion was filed, this Court filed a *per curiam* opinion in that case in which we stated: "On consideration of the motion for a clarification of the opinion herein, we have concluded that the question whether or not there has been a taking of the property is not necessary for our decision. We therefore withdraw the opinion expressed that there has not been a taking, and rest our conclusion upon the use of the wrong remedy, *i.e.,* that mandamus does not lie." For the same reasons and under the same authorities expressed in the opinion in *Friendship Cemetery v. City of Baltimore,* 197 Md. 610, 81 A. 2d 57, *supra,* we conclude that the allegations in the declaration before us, which

are the same on the question of taking as in the former case, do not amount to a taking. It is unecessary to repeat them here and they are adopted as a part of this opinion. As to the strenuous contention in the instant case that the Cemetery is left as an island in the airport to such an extent that it is "taken", the case of *Krebs v. State Roads Commission,* 160 Md. 584, 154 A. 131, *supra,* and cited in the former opinion, is very pertinent. In that case it was alleged that the removal of the old grade crossing and the interruption of the old highway, would deprive the complainants of convenient access and leave their store property in a *cul-de-sac,* causing a loss of its usefulness, value and business. This Court there held that the allegations did not constitute a taking. See also *Ragan v. Susquehanna Power Co.,* 157 Md. 521, 527, 146 A. 758. We are of opinion that the demurrer to the second count was properly sustained.

As the demurrer to the third count should have been overruled, the judgment will be reversed and the case remanded.

*Judgment reversed, with costs, and case remanded.*

MARBURY, C. J., delivered the following dissenting opinion.

I agree that the demurrer should have been sustained as to the first count, and that it should have been overruled as to the third count, but I do not agree with the majority opinion on the second count. I think that the appellant has been deprived of the only use which it can make of the cemetery, that is, to sell lots for burial. The mere fact that it has a right of access does not mitigate against the fact that in all essential aspects, its property has been taken. Just because it is possible for a funeral cortege to drive in is not important, when the circumstances are such that no such cortege will drive in. And, of course, the only way a cemetery acquires any money is by selling lots. As the circumstances are

452

such that no one will buy lots, the property of the appellant has just as surely been taken as if it were condemned and in the possession of the Airport. I shall not attempt to prolong this opinion by discussing authorities in support of this position. They are: *Morrison v. Clackamas County,* 141 Or. 564, 18 P. 2d 814, 816; *In re Forsstrom et ux.,* 44 Ariz. 472, 38 P. 2d 878, 882; *Commonwealth v. Kelley,* 314 Ky. 581, 236 S. W. 2d 695, 697; *Gasque v. Town of Conway,* 194 S. C. 15, 8 S. E. 2d 871, 873-874; *Stockdale v. Rio Grande Western Ry. Co.,* 28 Utah 201, 77 P. 849, 852-853; *Nalon v. Sioux City,* 216 Iowa 1041, 250 N. W. 166.