ARNOLD ET UX. *v.* PRINCE GEORGE'S COUNTY, MARYLAND ET AL.

[No. 44, September Term, 1973.]

*Decided November 9, 1973.*

The cause was argued before MURPHY, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH, DIGGES and LEVINE, JJ.

*Carl Harrison Lehmann,* with whom was *Charles Duvall Smith* on the brief, for appellants.

*Michael O. Connaughton, Associate County Attorney,* with whom was *Joseph S. Casula, County Attorney,* on the brief, for Prince George's County, part of appellees. *Robert H. Levan, General Counsel,* with whom was *David D. Freishtat* on the brief, for Maryland-National Capital Park and Planning Commission, other appellee.

BARNES, J., delivered the opinion of the Court.

The appellants, Jesse C. Arnold and Carol S. Arnold, his wife, who were plaintiffs below, own as tenants by the entireties Lot No. 15 in the Oaklawn Subdivision in Prince George's County. This lot contains 9.1 acres of land, has a frontage of about 335 feet on Allentown Road with a depth of approximately 1,300 feet, and is improved by a residence known as 8400 Allentown Road, S.E., Oxon Hill, Maryland (the subject property). They filed an action at law, a claim for injunction, and a request for a jury trial, on July 29, 1971, in the Circuit Court for Prince George's County against the appellees, Prince George's County (the County) and Maryland-National Capital Park and Planning Commission (the Commission).

The declaration consisted of four counts. Count I, after describing the parties and the subject property, averred that the Commission in 1959 designated upon a master plan a proposed road, designated as Allentown Road, relocated in such a fashion as to roughly bisect the rectangular shaped

subject property so as to sever it into two irregularly shaped parcels; that the County has since developed road plans "utterly inconsistent with and repugnant" to the Commission's designated "Allentown Road relocated"; that neither the County nor the Commission has done anything toward the consummation of the plans for the relocated Allentown Road; that all of this constitutes a cloud on the subject property and prevents the Arnolds from conveying a merchantable title; that the purpose of designating the relocated road on the Master Plan was to depress values and to delay and frustrate development and rezoning of the subject property to its highest and best use; that the delay of 12 years amounts to negligence on the part of both the Commission and the County; and, that the subject property has been devalued as a result of this negligence. The Arnolds claimed damages in the amount of $50,000.

Count II incorporated by reference all of the facts averred in Count I and then stated that the admitted purpose of the County in concert with the Commission was to "freeze" and depress property values and to prevent the economic development of the subject property, which purpose has succeeded and amounts to a taking of the subject property by the County acting in concert with the Commission without due process of law contrary to the Fifth Amendment of the Federal Constitution made applicable to the States by the Fourteenth Amendment of that Constitution and to Article 19 of the Declaration of Rights and Article III, Section 40 of the Maryland Constitution as well as Section 201 of the County Charter. The claim for the alleged devaluation was $50,000.

Count III incorporated by reference all of the facts averred in Counts I and II and averred that the actions of the County and the Commission constitute an "unwarrantable interference" with the subject property and "a gross and willful abuse of the power of eminent domain." $50,000 damages were claimed.

In Count IV the Arnolds incorporated prior allegations and prayed for a mandatory injunction requiring the County

and the Commission "to forthwith publicly renounce their present intention to take any part of the Plaintiffs' lands for public use."

The Commission, on September 17, 1971, filed a motion raising preliminary objections, pursuant to Maryland Rule 323 b, asserting that it is a public corporation created by the General Assembly of Maryland to administer planning and zoning powers within the Maryland-Washington Regional District; and, in the course of administering the Regional District Act in relation to the matters averred in the declaration, it was discharging its governmental function mandated by that Act and, therefore, as a public corporation, was immune from any claim for damages or for equitable relief arising out of that governmental function. The Commission also stated that it does not exercise any power of zoning or rezoning.

On September 21, 1971, the County also filed a motion raising preliminary objections alleging that as a municipal corporation of the State of Maryland it has governmental immunity against liability in an action which is "for an alleged tort committed in the exercise of a governmental function."

The circuit court (McCullough, J.) on January 21, 1972, after hearing argument and considering memoranda of counsel, filed a written opinion and an order of court denying the County's motion raising a preliminary objection, but granting that of the Commission. The court was of the opinion that the Commission was in an analogous legal position to that of the Washington Suburban Sanitary Commission so far as being a municipal corporation was concerned; that our opinion in *Neuenschwander v. Washington Suburban Sanitary Commission*, 187 Md. 67, 48 A. 2d 593 (1946) was controlling on this point; that the Commission was acting in a governmental capacity in promulgating the Master Plan, relying on our decision in *Fowler v. Board of County Commissioners of Prince George's County*, 230 Md. 504, 187 A. 2d 856 (1963); and, that the Commission's action, being governmental in nature, rendered it immune from suit, relying upon our decision in

*Irvine v. Montgomery County,* 239 Md. 113, 210 A. 2d 359 (1965).

Thereafter, on April 17, 1972, the County filed the general issue plea in tort and a special plea of limitations, *i.e.,* that the cause of action did not accrue within three years of the filing of the action.

The case came on for trial on January 10, 1973, before Judge Taylor and a jury. The Arnolds produced evidence which established the location, size and their ownership of the subject property, as well as that the location of their residence is near the frontage on Allentown Road, and that the subject property is ideally located for single-family development in harmony with the surrounding properties. Mr. Arnold testified that in 1964 the Arnolds attempted to sell the subject property exclusive of the improvements and homesite. The prospective purchaser apparently refused to consummate the sale when he discovered that "Allentown Road relocated" (a dual highway with a 150-foot right-of-way to be built by the State Highway Authority) on the Master Plan promulgated by the Commission for the Henson Creek Watershed in 1963 would run through the subject property. The Arnolds later sought to mortgage the subject property and to sell it, but to no avail because of the designation of "Allentown Road relocated" on the Master Plan.

Mr. Arnold also stated that he had never made application for a building permit for the building of single-family residences on the subject property and had never filed a subdivision plat. He was permitted to state that the reason he had not filed for a building permit under § 12.6 of the Zoning Ordinance for the Regional District in Prince George's County (Vol. 1 of the Code of Public Local Laws of Prince George's County, Appendix B, § 12.6, at 360) was:

> "I have personal knowledge where others who are involved in this similar situation have attempted to subdivide and that has been rejected, disapproved by the Park & Planning Commission, and I am not in a financial position where I feel that I can invest

that sort of money in a venture that I know will not
be approved before I attempt it."

George C. Martin, Jr., Chief of the Bureau of Engineering
of the County's Department of Public Works was called as
an adverse witness by the Arnolds. He testified that the
Commission's Master Plan had not been adopted by the
County and that, although the county officials sought to
follow the Master Plan "as near as reasonably possible," the
County might decide to change the alignment or grade of the
road if this would result in more economical construction or
do a smaller amount of property damage. Thus, he
concluded that the County does not adhere to the Master
Plan "one hundred per cent." He further testified that
"Allentown Road relocated" was not in the County's
program at the time of trial and he would "not anticipate it
being put in the program within the foreseeable future. The
program is six years." The Commission published a master
plan for highways in 1969 which also indicated the relocation
of Allentown Road, but the County did not approve of this
plan nor is the County bound by it.

Richard N. Pierce, a real estate appraiser whose
qualifications were not challenged, testified that in his
opinion the subject property had been devalued by $32,100 as
a result of the designation of "Allentown Road relocated" on
the Commission's Master Plans, the damage principally
accruing to the five acres to the rear of the subject property.

Judge Taylor, at the end of the Plaintiffs' case, granted
the County's motion for a directed verdict, being of the
opinion that the proof indicated that the County had never
adopted the Master Plans in question or participated in their
preparation or contributed in any way to any damage to the
Arnolds. Final judgment for the County for costs was duly
entered on January 17, 1973.

The Arnolds perfected timely appeals to this Court from
the order of January 21, 1972, and from the judgment of
January 17, 1973. They contend that (1) the inclusion by the
Commission of part of the subject property in the 1963
Master Plan and in the 1969 Master Plan for Highways as

"Allentown Road relocated" is a taking of their property for public use without paying just compensation and without due process of law; (2) the County is liable for damages resulting from the alleged taking in (a) having "rendered important contributions to the formation of the Master Plans" and (b) having provided implementation of plans for construction and improvement of county roads and "in large measure" adopted plans authorized by the Commission; and (3) the trial court erred (a) in granting the Commission's motion for judgment based upon governmental immunity and (b) in directing a verdict for the County at the end of the Arnolds' case.

(1)

We do not find it necessary to decide the contention of the Arnolds that the lower court erred in sustaining the Commission's motion based upon governmental immunity because, even assuming for the sake of argument that the Commission enjoys no general governmental immunity, the result reached by the lower court was nevertheless correct under the facts in the present case.[1]

There would appear to be little doubt that the preparation and promulgation of master plans by the Commission,

1. We have already observed that the lower court analogized the Commission to the Washington Suburban Sanitary Commission and relied heavily upon the holding of our predecessors in Neuenschwander v. Washington Suburban Sanitary Commission, 187 Md. 67, 48 A. 2d 593, decided on July 23, 1946, that the Sanitary Commission was a "municipal corporation." We note that Chapter 423 of the Laws of 1955, *inter alia,* added § 9 "Definitions and limitations" to Art. 23A, entitled "Corporations—Municipal," which provided under the subtitle "Home Rule" the following:

"(b) *Certain corporations excepted.* — The term 'municipal corporation' does not embrace or include the Washington Suburban Sanitary Commission, or the Washington Suburban Sanitary District under the jurisdiction of such Commission; the term 'municipal corporation' does not embrace or include the Maryland-National Capital Park and Planning Commission, or the Maryland-Washington Metropolitan District or the Maryland-Washington Regional District under the jurisdiction of such commission."

This identical language has been continued unchanged until the present time. See Code (1957, 1973 Repl. Vol.) Art. 23A, § 9 (b). The Act of 1955, of course, was enacted some nine years after the decision in the Neuenschwander case.

including the location of proposed streets, is a valid exercise of the police power in the absence of fraud, arbitrariness or capriciousness. As our predecessors stated in *Krieger v. Planning Commission of Howard County*, 224 Md. 320, 323, 167 A. 2d 885, 886-87 (1961):

> "The basic constitutional point was decided long ago contrary to the appellant's contention. Zoning regulations according to a comprehensive plan and in the general public welfare may place restrictions on the use of property even though the restrictions result in serious financial loss to the owner. See *Euclid v. Ambler Co.*, 272 U. S. 365; *Anne Arundel County v. Ward*, 186 Md. 330, 337; *Benner v. Tribbitt*, 190 Md. 6, 20. Of course, the restrictions must be supportable as a proper exercise of police power. For recent cases on the subject, see *Walker v. Board of County Com'rs of Talbot County*, 208 Md. 72, 90, cert. denied, 350 U. S. 902 and *Grant v. Mayor & C. C. of Baltimore*, 212 Md. 301, 314. For a case dealing with the scope of the planning power, see *Mansfield & Swett v. Town of West Orange*, 198 Atl. 225 (N. J.). Planning with reference to future streets is no novelty in Maryland. See *Clarks Lane Garden Apts. v. Schloss*, 197 Md. 457, 460."

*See also* the prior Maryland cases cited in *Krieger*.

The federal authorities are to the same effect. *See Danforth v. United States*, 308 U. S. 271, 286, 60 S. Ct. 231, 237, 84 L. Ed. 240, 247 (1939) and *Bauman v. Ross*, 167 U. S. 548, 17 S. Ct. 966, 42 L. Ed. 270 (1897).

The Laws of 1959, Ch. 780, § 65 — see Vol. 2 of the Code of Public Local Laws of Prince George's County, Sec. 59-70 — provided that the making of a general plan by the Commission is for "the protection and promotion of the health, safety, morals, comfort, and welfare of the present and future inhabitants of the regional district," thus clearly indicating that it was the intent of the General Assembly that the making of plans by the Commission was pursuant to the police power.

The Arnolds correctly observe — and it is not disputed by the Commission or the County — that there may be a "taking" of property without the payment of just compensation as prohibited by Art. III, § 40 of the Maryland Constitution or by arbitrary, unreasonable and capricious conduct by a governmental authority denying due process of law contrary to Art. 23 of the Declaration of Rights in the Maryland Constitution and Clause 1 of the Fourteenth Amendment of the Federal Constitution without a physical taking by the governmental authority. In Maryland, it is well settled that if existing Zoning Ordinances deprive the property owner of *all* reasonable use of his property, such ordinances will be held to violate the constitutional provisions mentioned, so far as that property is concerned. *Spaid v. Board of County Commissioners for Prince George's County*, 259 Md. 369, 269 A. 2d 797 (1970) and prior cases in this Court mentioned in that opinion. A denial of access from the public street to a property by the governmental agency may also result in a taking without the payment of just compensation. *Sanderson v. Mayor & City Council of Baltimore*, 135 Md. 509, 109 A. 425 (1920) and prior Maryland cases therein cited, one of which is *Walters v. B. & O. R. R. Co.*, 120 Md. 644, 88 A. 47 (1913) where it was held that a denial of ingress and egress and a cutting off of light and air amounted to a taking without just compensation even though there had been no actual physical invasion of the property and that the municipal corporation was liable in tort for damages due to its actions which caused the loss to the property owner. Then, too, a requirement by a governmental authority that purports to require a property owner to spend money on his property for the public benefit will transgress the constitutional provisions mentioned. *Leet v. Montgomery County*, 264 Md. 606, 287 A. 2d 491 (1972) and cases cited in that opinion, including a citation with approval of our decision in *Stevens v. City of Salisbury*, 240 Md. 556, 214 A. 2d 775 (1965). We have also held that where the governmental authority seeks to use its zoning powers to depress the value of the property owners' land in anticipation of a subsequent condemnation proceeding, such

actions are unconstitutional. *Hoyert v. Board of County Commissioners for Prince George's County*, 262 Md. 667, 278 A. 2d 588 (1971) and prior Maryland cases cited in that opinion, including *Carl M. Freeman Associates, Inc. v. State Roads Commission*, 252 Md. 319, 250 A. 2d 250 (1969) cited with approval and followed by us in *Hoyert. See also* Annotation, *Plotting or Planning in Anticipation of Improvement as Taking or Damaging of Property Affected*, 37 A.L.R.3d 127, at 131-32 (1971).

On the other hand, this Court has held that consequential damages resulting from a public project, in the absence of a physical encroachment upon the property, is not compensable. *Krebs v. State Roads Commission*, 160 Md. 584, 154 A. 131 (1931). *See Friendship Cemetery v. City of Baltimore*, 197 Md. 610, 617, 81 A. 2d 57, 60 (1951) (*Friendship Cemetery I*). In *Friendship Cemetery II* — *Friendship Cemetery v. Mayor & City Council of Baltimore*, 200 Md. 430, 90 A. 2d 695 (1952), the Court held that the allegations in the third count of the declaration were sufficient to support a finding by a jury that the municipal corporation had acted in bad faith and unreasonably and had made a deliberate effort to depreciate the value of the property to enable it to acquire the land at a reduced price. The majority (Marbury, C. J., dissenting to the holding as to the second count only) indicated, however, that the allegations in the second count of the declaration, namely, that as a result of the actions of the municipality, no one was willing to purchase lots in the cemetery and that the cemetery company had been deprived of revenue from the sale of burial lots and operated at a loss since the coming of the airport and the acts of the city did not state a cause of action and the demurrer of the city to the second count was properly sustained. *See* 200 Md. at 450-51, 90 A. 2d at 704.

The Arnolds produced no evidence of bad faith on the part of the Commission or of any attempt by it to depress the value of part of the Arnold land for later acquisition by eminent domain proceedings when it placed "Allentown Road relocated" in the 1963 Master Plan for the Henson Creek Watershed or in the 1969 Master Plan for Highways.

As will be later observed in this opinion, no public body appears to have sought to construct "Allentown Road relocated" and, indeed, it has not been included in the County's Six-Year Plan. No plans have been published for the relocation of Allentown Road and there has been no formal reservation of any right-of-way for "Allentown Road relocated." Under these circumstances, there has been no taking by the Commission's actions of the Arnold property without the payment of just compensation nor any denial of due process of law. There was no prejudicial error by the lower court in granting the Commission's motion for judgment and in the entry of a judgment in its favor for costs.

(2)

In our opinion, the Arnolds did not prove any facts which would establish any damages against the County, so that the lower court properly granted a motion for a directed verdict in the County's favor at the conclusion of the Arnolds' case.

As we have already indicated, Mr. Martin, a witness for the Arnolds and Chief of the County's Bureau of Engineering, testified without contradiction that the County is not bound by the Master Plan promulgated by the Commission; that, in fact, the County "very often change[s] the plan proposal to achieve economies in construction"; that none of the Arnold land is in reservation; and, that "Allentown Road relocated" has not been included as a County project.

In sum, the County has not participated in any way with the promulgation or implementation of the designation of "Allentown Road relocated" on the Master Plans of the Commission and hence is not liable for any damages resulting to the Arnolds from such designation. Thus, even assuming for the sake of argument, that such designation would otherwise give rise to compensable damages, we are of the opinion that it does not under the facts of the present case.

(3)

There is an additional reason why the order of January 21, 1972, and the judgment of the lower court of January 17, 1973, should be affirmed, *i.e.*, that the Arnolds' claim is, in any event, premature because of their failure to exhaust their administrative remedies prior to the institution of the present action.

We held in *Poe v. Mayor & City Council of Baltimore*, 241 Md. 303, 216 A. 2d 707 (1966) that a property owner who contended that the Baltimore City Zoning Ordinance was unconstitutional *as applied to his property* could not successfully maintain a declaratory judgment suit for a declaration of unconstitutionality because he had not exhausted his administrative remedy which was to request a special exception as provided in the Zoning Ordinance. We cited *Poe* with approval and followed it in *Spintman v. Chesapeake & Potomac Telephone Co. of Md.*, 254 Md. 423, 428, 255 A. 2d 304, 307 (1969) where Judge Finan, for the Court, stated:

> "Where an administrative remedy is available, such as a hearing before the Public Service Commission, to determine the reasonableness of a rate, prior resort to that remedy is a necessary prerequisite to a standing before the courts."

The Prince George's County Code, Vol. 1, Appendix B, "ZONING," § 12.6 entitled *"Proposed buildings within planned highways and transit routes"* provides a procedure which the Arnolds should have followed in order to obtain a building permit on their land located in a proposed road. That section provides:

> "From and after the adoption by the commission of any master plan or general plan provided for by section 59.68 of the Code of Public Local Laws of Prince George's County, 1963 Edition, as amended, no permit shall be issued for any structure or part of a structure on any part of the land within the planned acquisition lines of a proposed new

highway, street or rapid transit route or facility or a proposed relocation or widening of any existing highway, street or rapid transit route or facility; provided, however, that the district council shall have the power, upon appeal filed with it by the owner of any such land, to grant a permit for a structure or part of a structure in such planned acquisition lines in any case in which the district council finds: (a) That the entire property of the appellant of which the reserved highway, street, transit route or facility forms a part, cannot yield a reasonable return to the owner unless such permit be granted; and (b) that balancing the interest of the county and preserving the integrity of the master plan of highways, general plans, and any other local plans, and the interest of the owner of the property and the use of his property and in the benefits of the ownership thereof, the grant of such a permit is required by the consideration of reasonable justice and equity. Before taking any action on any such appeal the district council shall conduct a public hearing. At least fifteen (15) days notice of the time and place of such hearing shall be given to the applicant at the address specified by the applicant in his appeal petition and shall be published at least once in a newspaper of general circulation in the county. In the event that the district council grants a building permit on any such appeal it shall specify the exact location, ground area, height, and other details as to the extent and character of the structure or part of a structure for which the permit is granted, and may impose reasonable requirements as a condition of granting such permit, which requirements shall inure to the benefit of the county."

It would appear from the facts of the present case that the Arnolds might well have received favorable consideration under this section if they had appealed to the District Council for relief. *See Hoyert v. Board of County*

*Commissioners for Prince George's County*, 262 Md. 667, 278 A. 2d 588 (1971), *supra*. They did not do this and hence did not exhaust their administrative remedy necessary to give them standing to maintain the present action.

Nor did the Arnolds file any preliminary subdivision plans with the Commission, which, as already stated, has never sought to make a reservation for the portion of the Arnold land designated on the Master Plans as "Allentown Road relocated." The Prince George's County Code, Vol. 1, Appendix A, "SUBDIVISION REGULATIONS," § 12 (a) and (b) provides:

"(a) The commission shall refer all preliminary subdivision plans to its General Plan or parts thereof, adopted or proposed, or studies related thereto, to determine the need for reserving for public use any of the land included in the said preliminary subdivision plan. Reservations may be required for: highway or street rights-of-way; public building sites; parks—except park lands to be acquired under the provisions of the Act of Congress of the United States known as Public Act 284 of the 71st Congress, approved May 29, 1930 (46 Stat. 482), popularly known as the 'Capper-Cramton Act' as amended by Public Law 699, 79th Congress, approved August 8, 1946—playgrounds, or other recreation areas; or other public purposes.

"(b) If a reservation appears desirable, the commission may refer the plan to the public agency concerned with acquisition for its consideration and report. The commission may propose alternate areas for such reservation and shall allow said public agency thirty (30) days for reply. The agency's recommendation, if affirmative, shall include a map showing the boundaries and area of the parcel to be reserved and an estimate of the time (not over 3 years) required to complete the acquisition."

Here again, an adequate remedy appears to be afforded the Arnolds. *See Hoyert, supra.* Indeed, Mr. Pierce, the real estate expert of the Arnolds, testified:

"[I]n all my studies and going over this and the investigation, there was no reason why a subdivision plat would not be approved for the subject property."

> *Order of January 21, 1972, and judgment of January 17, 1973, affirmed, the appellants to pay the costs.*